1  MEGHAN BLANCO (238171)
   LAW OFFICES OF MEGHAN BLANCO
2      28202 Cabot Road, Suite 300
       Laguna Niguel, California 92677
3      Telephone:    (949) 296-9869
       Facsimile:    (949) 606-8988
4      E-mail:       mblanco@meghanblanco.com

5
   Attorney for Mr. Hatch
6

7

8

9                          UNITED STATES DISTRICT COURT

10                    FOR THE SOUTHERN DISTRICT OF CALIFORNIA

11

12  UNITED STATES OF AMERICA,           No. CR 23-1201-CAB

13          Plaintiff,                  DECLARATION OF COUNSEL

14          v.

15  TORRANCE HATCH,

16          Defendant.

17

18

19

20                    DECLARATION OF MEGHAN BLANCO

21

22      I, Meghan Blanco, declare as follows:

23      1.   I represent Mr. Hatch in these proceedings.

24      2.   Attached hereto as Exhibit A is a true and correct copy of a portion of an

25           investigative report produced by the San Diego District Attorney's Office

26           in connection with Mr. Hatch's initial arrest in this case.

27
                                         1
28

I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge.

Executed this 15 day of February, in San Clemente, California.

                                *//s// Meghan Blanco*
                                MEGHAN BLANCO

**SAN DIEGO POLICE DEPARTMENT**
**INVESTIGATOR'S REPORT**
**INCIDENT #23050008404**



### Statement of Torence Hatch – suspect

At around 1717 hours, I attempted to interview Hatch regarding this investigation. Hatch was agitated over his arrest. Before I could begin speaking with him, Hatch stated, "The guns were in the bag." Hatch went on to say, when the officer asked him if he had any weapons, Hatch said, "No." Hatch went on to say, "I don't carry any weapons." Hatch wanted to know what he was being charged with, and I told him everyone was getting charged for weapon violations. Hatch said, "That driver works for the promoter at the Phantom. He's just a driver." I asked Hatch for his name, and Hatch said, "If your charging me, the only thing I'm going to give you is my name." I told Hatch that was fine, and he confirmed his name and date of birth. Hatch repeatedly told me this is a bad charge. Before I could read Hatch his Miranda Rights, he went on to tell me he had two guns and they flew out here from Atlanta. I told Hatch I wanted to read him his rights. I started to admonish Hatch when he interrupted me to ask what he was being charged with. I told Hatch he was being charged with gun possession. Hatch raised his voice and said, "The guns were in the bag." Hatch said, "You're reading me a false charge." I attempted to admonish Hatch a second time and he continued to state, "The guns were in his bag." He interrupted me again as he repeated, "The guns were in his bag. The marijuana was in my hand." Hatch said, "The gun was not on the seat." It was clear to me Hatch was not listening to me as I tried to read the Miranda admonishment. Hatch wanted me to view the body worn camera footage before I charged him with anything. I told Hatch he was already charged. Hatch continued to make unsolicited voluntary statements. He insisted the guns came out of the bag that was on his (Johnson's) shoulder. I told Hatch I hear what he is saying, but in order for me to speak with him about what we know, I would have to read him his rights. Hatch continued to tell me the guns where in his (Johnson's) bag and there was nothing on the seat at all. Hatch told us they get stopped all the time, and the guns are in his bag. Hatch told me she (Officer Vaccarello) went in his (Johnson's) bag and pulled out the guns. Hatch spoke about flying with the guns and claiming them at the airport. I told Hatch I could not arrest him if the guns were in the

**SAN DIEGO POLICE DEPARTMENT**
**INVESTIGATOR'S REPORT**
**INCIDENT #23050008404**

bag, and Hatch agreed, but in this case the gun was not in the bag. I told Hatch I could explain it to him, but I need to admonish him first. Hatch requested I get the officer and ask her about it. We told him we already did that. Hatch continued to raise his voice and repeated, "The guns are always in his bag and he carries them to protect me." At this point it was clear Hatch was not going to allow me to admonish him, so I told Hatch the interview was over. I got up and I told Hatch I would review the body worn camera footage. Hatch said, "Thank you." Hatch continued to speak about the guns, and I did not ask him any questions about possession. I told Hatch I would be reviewing the video footage. Hatch calmed down for a while as he continued to tell me the guns were in the bag, and during the traffic stop he confirmed with his security that both guns were in the bag. Prior to exiting the interview room, Detective Williams placed a photo on the table. Detective Williams told Hatch this was why he was here at police headquarters. The photo was posted on Instagram, and in the photo, Hatch was standing at the video shoot wearing the same clothes, and you could clearly see a black Glock style handgun tucked in the back of his waistband. Detective Williams said, "That's a gun" and Hatch said, he knew it was a gun and they put it there for the video shoot. I told Hatch that was why I wanted to talk to him because I already spoke with his security, and the stories aren't matching up. Hatch began making more unsolicited voluntary statements about the gun. Hatch stated they gave him the gun, and he had to put it in his back pocket. He was only there for about 30 minutes and he gave it back to his security guard. I did not ask Hatch any questions about the video shoot or the gun that was in the photo. I told Hatch I was going to put him back in the police car and check the video footage.

**Statement of Michael T. Fisher – suspect**



Following all three interviews, Officer Vaccarello told me Hatch refused to provide a DNA sample. Hatch was very upset and yelling at officers. Officer Vaccarello asked me if the situation required a forced blood draw.

**SAN DIEGO POLICE DEPARTMENT**
**INVESTIGATOR'S REPORT**
**INCIDENT #23050008404**

SDPD Officer Schrom (ID # 6254) informed me, sometime earlier during the contact, Hatch requested the officers test his blood sugar levels. Officer Schrom observed this, and he still had the blood test strip from the finger prick test kit. Officer Schrom suggested we could impound the blood sample used to test Hatch's blood sugar levels, so I requested the blood sample be impounded. This would allow us to obtain the DNA in the least intrusive manor while avoiding an unnecessary use of force issues.

During my attempt to interview Hatch, he told me both guns were in his bodyguard's bag. He asked me repeatedly to review the officer's body cameras. I was unable to obtain any footage until the cameras were downloaded on to the server. Once this was done, I viewed the footage (05-08-23) and I could clearly see during the traffic stop the Glock 19 was laying on the rear seat and not secured in the security guard's bag (see below):




BWC – Officer Vaccarello #7616



BWC - Officer Price #7944